Michael F. Ram (SBN 104805)
mram@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, California 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

*Attorney for the Plaintiff Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARIN and GEORGE EDWIN MILLIGAN, California residents, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>TOYOTA MOTOR SALES, U.S.A., INC., a California corporation; and TOYOTA MOTOR CORPORATION, a foreign corporation,<br><br>            Defendants. | NO. C09-05418 RS<br><br>**DECLARATION OF MICHAEL F. RAM IN SUPPORT OF (1) MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; AND (2) MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Date:   May 5, 2011<br>Time:  1:30 p.m.<br>Place:  Courtroom 3, 17th Floor<br>         [Hon. Richard Seeborg]<br><br><u>CLASS ACTION</u> |

I, Michael F. Ram, declare as follows:

1.      I am a partner with Ram, Olson, Cereghino & Kopczynski LLP, one of the law firms representing the Plaintiff Class in this case. I submit this Declaration in Support of Plaintiffs' Motion for Final Approval of the Class Settlement and in Support of Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Expenses.

//

2. I am a member of good standing of the California State Bar. I have personal knowledge of the facts included in this Declaration.

3. Our firm has a great deal of experience in consumer product class actions and particularly with respect to vehicle cases such as this one. I have attached our firm resume as **Exhibit 1**.

4. Plaintiffs' problems with their vehicles led them to contact Plaintiffs' Counsel, who began investigating the case in September 2009. Prior to filing the lawsuit in November 2009, Class Counsel performed substantial work that led to the filing of the Complaint. Their efforts included the following: (1) interviewing numerous current and former RAV4 owners and lessees to fully understand the nature of the alleged defect and Toyota's reaction to efforts at seeking reimbursement; (2) researching the experience of the class representatives and others regarding the alleged defects; (3) conducting extensive research through the use of public records and the Internet to identify the scope of the ECM and transmission failures, the affected vehicles, and the costs of replacement; (4) engaging and working with an automotive expert to diagnose and confirm the alleged ECM defect and to assist counsel in guiding the investigation; (5) consulting with the Center for Auto Safety regarding the defect and the safety issues it raises; and (6) analyzing Toyota's Technical Service Bulletins regarding the problem.

5. After filing the Complaint, Plaintiffs continued to aggressively investigate the claims – seeking documents and other materials from the California Air Resources Board ("CARB") and propounding formal written discovery request to Toyota. Although Plaintiffs agreed to stay formal discovery pending mediation of the dispute, in connection with the Settlement, the parties agreed to engage in substantial confirmatory discovery – which included reviewing Toyota documents regarding the ECM's performance, the relationship between the performance of the ECM and the transmission, Toyota's capacity to repair the vehicles at issue, warranty claims information, and sales data. Plaintiffs also conducted two Fed. R. Civ. Pro. 30(b)(6) depositions of Toyota personnel most knowledgeable concerning the alleged defect and Toyota's response to it.

//

6. In all, Plaintiffs' Counsel estimate that we were in contact with more than 130 current and former RAV4 owners and lessees who were affected by the alleged ECM defects. Plaintiffs' Counsel analyzed the data presented by their experiences and, based on these experiences, prepared a potential damages model for use in negotiating a possible settlement.

7. Although both parties were amenable to reaching a mutually agreeable settlement, there were numerous issues that required negotiations and resolution, including the scope and geographic reach of the proper class, the proposed relief to Class Members, and the procedural safeguards available to consumers seeking relief under any settlement. Following preliminary communications regarding settlement, the parties agreed to mediate the claims of both the Milligan and Washington actions with an experienced mediator, the Honorable Edward J. Wallin (ret.). Toyota had filed a motion to dismiss this action. The parties agreed to stay consideration of this motion pending settlement discussions. However, in their mediation submissions, the parties extensively briefed the legal issues set forth in Toyota's motion.

8. The mediation sessions concerning the class relief, held on June 9 and 18, 2010, were at all times at arm's length and adversarial.

9. Throughout the mediation process, Toyota asserted that class certification was not appropriate in this case. In particular, Toyota maintained that choice of law issues render a nationwide class unmanageable and that individualized issues regarding Settlement Class Members' driving habits, maintenance, and repair practices would predominate at trial.

10. Toyota has informed the parties that there are approximately 234,399 Class Vehicles.

11. Only after the parties had negotiated relief for the Settlement Class did the parties engage in a separate mediation regarding attorneys' fees and expenses. These negotiations – which were also conducted with the assistance of Justice Wallin – were robust, adversarial, and at arm's length. Indeed, because the parties anticipated that any attorneys' fees and expenses would be paid in addition to the relief provided for the Settlement Class (rather than paid out of the Class relief), Toyota had every incentive to negotiate as limited a proposed attorneys' fee award as possible. Through the mediation process, the parties agreed to a resolution of the fees and

expenses issue.

12. When the Settlement Agreement was executed, both sides were well-informed regarding the strengths and weaknesses of their respective positions. Class Counsel also insisted that the Settlement be conditioned on their ability to conduct further confirmatory discovery regarding: (1) the nature and frequency of customer complaints; (2) Toyota's decision to issue a Technical Service Bulletin regarding the ECMs and/or related transmission failure; (3) Toyota's communications with governmental agencies regarding the failing ECMs; (4) verification of relevant failure and replacement rates; and (5) any and all fatigue, durability or bench testing relating to the ECMs or related transmission damage. Class Counsel reviewed a substantial document production, took two Fed. R. Civ. P. 30(b)(6) depositions, and interviewed numerous Class members. As a result of this discovery, Class Counsel are convinced that the cause of the defect has been identified, the scope of the Class is known, the proposed warranty enhancement is adequate, and Toyota has the capacity to make effective repairs.

13. After the Court entered the Order preliminarily approving the settlement on May 18, 2011, Class Counsel worked with Toyota and the claims administrator on a number of administrative tasks regarding notice and the claims process. The claims administrator intends to mail notice to the Class no later than September 9, 2011. Once the Notice is mailed, Class Counsel expect to receive communications from many Class Members with questions concerning the Settlement. Class Counsel expect that staff members from each of their firms will likely spend many hours responding to Class Members who have questions regarding their eligibility for relief and/or the proper method for submission of their claims materials. Class Counsel will spend the time needed to respond individually to every person who calls or e-mails with questions regarding the settlement.

14. To date, Class Counsel have spent 1,485 hours related to the investigation, prosecution, settlement and settlement administration of this case through September 6, 2011, and expect to spend over two hundred fifty additional hours through the expiration of the Settlement Agreement, for a total exceeding 1,735 hours. Class Counsel's lodestar to date is $778,806.00.

1   //

2   15.     Class Counsel also have incurred $23,380.00 in litigation expenses.  These expenses, which include photocopying, legal research, travel, expert, deposition, and mediation expenses among others, were necessary to prosecuting this litigation.

16.     The declarations Class Counsel have submitted in support of the motion for final approval and attorneys' fees break down this total by timekeeper.  In addition, the declarations contain a detailed summary of the work underlying the reported time, performed from inception of the litigation to the filing of the instant motion.

17.     Class Counsel's time when multiplied by their attorney fee rates represents a lodestar of $778,806.00.  The rates of all attorneys, paralegals and legal assistants whose time is included in this application are listed in the Class Counsel declarations.  These are the hourly rates Class Counsel charge in similar matters, and these rates have been approved by state and federal courts in many other contingent matters, including those prosecuted in the Northern District of California.

18.     This lawsuit required Class Counsel to commit a significant number of hours in a short time period to investigate and resolve the claims of the Class.  The case was staffed by attorneys at four small law firms (each with fewer than ten attorneys), and required a significant commitment by those attorneys, making them unavailable to pursue other opportunities while they were working on investigating, litigating, and settling this case.  In committing these limited professional resources to this matter, the necessary result was to delay progress on other matters and interfere with the investigation and filing of other potential cases.

19.     Throughout the course of the litigation, Class Counsel have had to incur out-of-pocket expenses totaling $23,380.00.  These expenses include: (1) filing fees; (2) copying, mailing, faxing and serving documents; (3) conducting depositions and obtaining deposition transcripts; (4) conducting computer research; (5) travel to depositions and hearings; (6) expert fees; and (7) mediation expenses.  Class Counsel put forward these out-of-pocket expenses without assurance that they would ever be repaid.

20.     Plaintiffs ask the Court to approve $5,000 incentive awards to Class

Representatives Carin and Edward Milligan and Damashata Washington (that is, a total two $5,000 incentive awards, one to the Milligans and one to Ms. Washington). Toyota has agreed to pay these awards if approved. The Milligans and Ms. Washington each spent a number of hours reviewing documents and consulting with counsel about the claims in this case and were prepared to maintain their involvement throughout the course of the litigation.

21. As co-counsel for the class, we were involved in strategizing with co-counsel in all aspects of the case, including all of the tasks described above in Paragraphs 4-13.

22. The chart attached to this declaration as **Exhibit 2** is a summary of time spent by our firm on this litigation, and the lodestar calculation based on the Firm's current billing rates. The chart includes the name of each attorney who has worked on the matter, the current hourly billing rate, and the hours expended by each individual. The chart is based on contemporaneous time records kept on the Timeslips program. The total number of hours spent on this action by the Firm as of August 30, 2011, is 230.10. The total lodestar amount for the attorney time based on the Firm's current rates is $172,575.00.

23. The Firm's current rates are appropriate in light of prevailing rates for similar legal services provided by lawyers of reasonably comparable skill, experience, and reputation and similar rates were recently approved in fee awards by Judges Wilken and Fogel of the Northern District of California.

24. The chart attached to this declaration as **Exhibit 3** provides a summary of the unreimbursed expenses incurred by the Firm during the course of this litigation. These charts were prepared using contemporaneous time records kept by my Firm. With respect to the unreimbursed expenses, the Firm has spent a total of $1,537.69 for this litigation, including necessary costs associated with research, filing fees, and mail.

25. Attached hereto as **Exhibit 4** are true and correct copies of excerpts from the deposition of Harold Clyde, dated December 2, 2010.

26. Based on my extensive experience in similar actions, I believe the Settlement is fair, reasonable and provides excellent relief for the Settlement Class. I fully support the Settlement.

1   I declare under penalty of perjury that the foregoing is true and correct.

2   Executed on September 6, 2011, in San Francisco, California.

*[signature]*
Michael F. Ram

# CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on September 6, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>    Frank C. Rothrock
>    Email:  frothrock@shb.com
>    Douglas W. Robinson
>    Email:  dwrobinson@shb.com
>    Eva M. Weiler
>    Email:  eweiler@shb.com
>    SHOOK, HARDY & BACON LLP
>    5 Park Plaza, Suite 1600
>    Irvine, California  92614
>    Telephone:  (949) 475-1500
>    Facsimile:  (949) 475-0016
>
>    Robert Thomas Adams, *Admitted Pro Hac Vice*
>    Email:  rtadams@shb.com
>    SHOOK, HARDY & BACON LLP
>    2555 Grand Boulevard
>    Kansas City, Missouri  64108
>    Telephone:  (816) 474-6550
>    Facsimile:  (816) 421-5547
>
>    *Attorneys for Defendants*

DATED this 6th day of September, 2011.

>                TERRELL MARSHALL DAUDT & WILLIE PLLC
>
>
>                By: /s/  Beth E. Terrell, CSB #178181
>                    Beth E. Terrell, CSB #178181
>                    Email: bterrell@tmdwlaw.com
>                    936 North 34th Street, Suite 400
>                    Seattle, Washington  98103-8869
>                    Telephone:  (206) 816-6603
>                    Facsimile:  (206) 350-3528
>
>                *Attorneys for Plaintiffs*

CASE NO. C09-05418 RS

— **EXHIBIT 1** —

# JEFFREY CEREGHINO

**Areas of Practice:**

Jeffrey B. Cereghino is a partner at Ram, Olson, Cereghino & Kopczynski LLP, located in San Francisco, California. His practice area primarily focuses upon complex litigation and class actions. He represents consumers in class action matters as well as property owners in complex construction and product liability actions.

He has been or is a class counsel on *Blangeras v. Stimson Lumber Company* (exterior siding), King County Superior Court, Washington; *Trinity Properties v. Central Sprinkler Company* (fire sprinklers), United States District Court, Eastern District of Pennsylvania; *The Sutterfield Owners Association v. Tyco International* (fire sprinklers), San Francisco Superior Court, California; *Weiner v. Shake Company of California* (roofing tiles), Contra Costa County Superior Court, California; *Whitley, et al. v. Perfection Corporations, et al.* (hot water heaters), United States District Court, Western District of Missouri; *Sun v. Mexalit, SA* (roofing tiles), Los Angeles County Superior Court, California; *Vega v. Mallory* (rent overcharges), Sacramento County Superior Court, California; *Shah v. Recon* (roofing tiles), Contra Costa County Superior Court, California; *In Re Elevator Litigation* (anti-trust), United States District Court, Southern District of New York; *Wallace v. Monier Company* (roofing tiles), Placer County Superior Court, California; *Ruyack v. Del Webb* (soil and foundations), Maricopa County Superior Court, Arizona; *Garner v. State Farm* (underpayment of claims), United States District Court, Northern District of California; *Ward v. Ipex, Inc.* (water pipes), United States District Court, Central District of California; *Fliss v. Ipex, Inc.* (water pipes), United States District Court, Western District of Washington, *Lyle J. Muenzenberger, et al. v. North Salinas Partners, LLC, et al,* (product liability), Monterey County Superior Court, and; *Milligan v. Toyota Motor Co.,* United States District Court, Northern District of California. He is presently class counsel for the administration of the *Forestex Siding* claims program which provides recovery for thousands of property owners in seven states.

**Legal History:**

Previously a Partner at Merrill, Nomura & Molineux, LLP and Principal at Berding & Weil, LLP, Mr. Cereghino has been practicing law since 1982, and has settled or tried over 90 complex multi-family construction, class action, single family home and/or product defect cases, resulting in a recovery in excess of $345 million.

Mr. Cereghino has been retained on several occasions as counsel to Building Owners and Managers Association (BOMA) to represent the interests of BOMA members in nationwide building product defect claims. Mr. Cereghino has been a frequent lecturer to various real estate industry groups, including common interest development organizations, BOMA, real estate organizations, and state and local health officials involved in "toxic mold" issues. He has spoken at the National Multi-Housing Council on mold and mold related issues. He is admitted to numerous Federal District Courts, the Ninth Circuit Court of Appeals and multiple state courts.

— **EXHIBIT 2** —

Merrill, Nomura & Molineux LLP
ToyotaRAV4.Class 1193.01
11/01/2009 - 02/07/2011

Recorded Hours, Rates, Expenses and Lodestar Calculations

| Ram & Olson LLP | NAME | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| PARTNERS | | | | |
| | Brett Nomura | 1.40 | $ 630.00 | $ 882.00 |
| | Jeffrey B. Cereghino | 207.75 | $ 710.00 | $ 147,502.50 |
| ASSOCIATES | | | | |
| | Jordan O'Brien | 25.25 | $ 375.00 | $ 9,468.75 |
| PARALEGALS | | | | $ - |
| | Sheely Grajeda | 20.60 | $ 185.00 | $ 3,811.00 |
| | | | | |
| | TOTAL | 255.00 | | $ 161,664.25 |
| | | | | |
| TOTAL FEES | | | | $ 161,664.25 |
| EXPENSES | | | | $ 13,134.84 |
| GRAND TOTAL | | 255.00 | | $ 174,799.09 |

— **EXHIBIT 3** —

MERRILL, NOMURA & MOLINEUX LLP
Toyota Costs

| Date | Description | Amount | Travel | Lit Cost (outside) | Lit Cost (inside) | Expert fees | Mediator |
|---|---|---|---|---|---|---|---|
| 10/20/2010 | Airfare | 10.00 | 10.00 | | | | |
| 11/22/2010 | Airfare 8/11 | 171.70 | 171.70 | | | | |
| 11/25/2010 | Copying | 169.00 | | | 169.00 | | |
| 3/25/2010 | Copying | 11.75 | | | 11.75 | | |
| 3/25/2011 | Copying | 34.50 | | | 34.50 | | |
| 10/25/2010 | Facsimile | 1.00 | | | 1.00 | | |
| 5/25/2010 | Facsimile | 1.00 | | | 1.00 | | |
| 6/25/2010 | Federal Express Charges - June, 2010 | 21.74 | | | 21.74 | | |
| 8/25/2010 | Federal Express Charges 8/10 | 26.92 | | | 26.92 | | |
| 11/17/2009 | Filing fees: USDC Northern District MNM Check No. 2451 | 350.00 | | 350.00 | | | |
| 10/21/2010 | Hotel/Lodging | 334.80 | 334.80 | | | | |
| 8/24/2010 | Hotel/Lodging | 239.36 | 239.36 | | | | |
| 8/23/2010 | Hotel/Lodging | 592.70 | 592.70 | | | | |
| 8/10/2010 | JAMS Inc. Mediation fees (due 8/11/10) MNM Check No. 2555 | 2,000.00 | | | | | 2,000.00 |
| 4/29/2010 | JAMS Inc. - Inv. 0001991363-200 Session time and case management fee for Judge Wallin. | 3,525.00 | | | | | 3,525.00 |
| 6/10/2010 | JAMS Inc. Inv. 0002028719-200 For hearing on June 18, 2010 | 3,525.00 | | | | | 3,525.00 |
| 8/24/2010 | Meals | 30.00 | 30.00 | | | | |
| 10/20/2010 | Meals | 64.40 | 64.40 | | | | |
| 10/19/2010 | Meals | 60.57 | 60.57 | | | | |
| 10/19/2010 | Meals | 201.56 | 201.56 | | | | |
| 10/21/2009 | Meals | 50.05 | 50.05 | | | | |
| 11/17/2009 | Messenger: Filing of Complaint in USDC Leo Fracess Inv. 09-529 | 98.00 | | 98.00 | | | |
| 11/24/2009 | One Legal: facsimile filing of Complaint, etc. (Invoice #6703820) | 29.00 | | 29.00 | | | |
| 4/12/2010 | Pacer Federal Court Copies | 11.04 | | 11.04 | | | |
| 8/24/2010 | Parking | 32.00 | 32.00 | | | | |
| 6/19/2010 | Parking 6/19 | 9.00 | 9.00 | | | | |
| 10/20/2010 | Parking | 64.00 | 64.00 | | | | |
| 11/25/2010 | Postage | 21.52 | | | 21.52 | | |
| 11/25/2009 | Postage | 11.08 | | | 11.08 | | |
| 12/25/2010 | Postage | 2.44 | | | 2.44 | | |
| 3/10/2010 | Robert A. Capurro Attorney Services Delivery of Courtesy Copies to USDC | 88.00 | | 88.00 | | | |
| 12/4/2009 | Service of Process of Complaint, etc. on Toyota, New York OneLegal Inv. 1757744 | 149.00 | | 149.00 | | | |
| 4/25/2010 | Conference call charges 2/10 | 99.09 | | 99.09 | | | |
| 5/6/2010 | Conference Call charges through 4/30/10 ConferenceCall Inv. 2670248151 | 64.33 | | 64.33 | | | |
| 8/1/2010 | Conference call charges 7/10 Inv. 2670334558 | 74.72 | | 74.72 | | | |

Pg 1 of 2                                                                8/24/2011; 5:00 PM

MERRILL, NOMURA & MOLINEUX LLP
Toyota Costs

| Date | Description | Amount | Travel | Lit Cost (outside) | Lit Cost (inside) | Expert fees | Mediator |
|---|---|---|---|---|---|---|---|
| 11/3/2010 | Transcript: Deposition Bruce Zellmer Barkley Court Reporters Inv. 397318 | 510.57 | | 510.57 | | | |
| 12/29/2009 | Auto on the Go--expert--#1022, dated 10/23/09 | 450.00 | | | | 450.00 | |
| | Totals | 13,134.84 | 1,860.14 | 1,473.75 | 300.95 | 450.00 | 9,050.00 |

— **EXHIBIT 4** —

```
                                                              Page 2
 1              UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                         - - -
 4   CARLIN and GEORGE EDWIN MULLIGAN     )
     and DAMASHATA WASHINGTON,            )
 5   California residents, on behalf of   )
     themselves and all others similarly  )
 6   situated,                            )
                                          )
 7                 Plaintiffs,            )
                                          )
 8       vs.                              ) No.: C09-05418RS
                                          )
 9   TOYOTA MOTOR SALES, U.S.A., INC.,    )
     a California corporation and         )
10   TOYOTA MOTOR CORPORATION, a foreign  )
     corporation,                         )
11                                        )
                                          )
12                 Defendants.            )
     _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _  )
13
14
15
16                     CONFIDENTIAL
17
18       Deposition of HAROLD E. CLYDE, taken on behalf of
19   Plaintiffs, at 5 Park Plaza, Suite 1160, Irvine,
20   California, commencing at 10:19 a.m., Thursday, December
21   2, 2010, before THERESA M. SILVA, CSR No. 12895.
22
23
24
25
```

Page 35

1  because they weren't managing the nickle thickness yet.
2       Q.   Okay.  So initially if you replaced the part,
3  you were just using the same generation?
4       A.   It was the same part that the car was built
5  right with.
6       Q.   Right.  Because you had to come up with a new
7  replacement part?
8       A.   Yes.  So until October 3rd, 2005, you couldn't
9  be sure they had managed the nickle thickness.
10      Q.   Right.  When I say replacement part, I
11 understand that that's vague so I'm going to try to ask
12 it differently.
13      A.   Okay.
14      Q.   When they came up with the new, improved part,
15 was there ever a systematic failure problem?
16      A.   Okay.
17           MR. ROTHROCK:  New and improved, you mean after
18 October?
19           MR. RAM:  After October 3rd of 2005.
20           MR. ROTHROCK:  Thank you.
21           THE WITNESS:  Correct.  There's no systematic
22 issues with the problem -- with the component after
23 October 3rd, 2005.
24 BY MR. RAM:
25      Q.   Thanks.  That's what I was trying to get at.

1        Q.   Do you have any basis on which to question it?
2        A.   No.
3        Q.   Okay.  And then the next sentence says, "Most
4    mileage is 197,267 kilometers, about 122,500 miles in
5    progress of or year."
6             Similarly, do you have any basis to question
7    that statement?
8        A.   No, I don't.
9        Q.   Then under question two we have:
10            "Does Toyota have any projection on the total
11   number of failures that might be expected, what
12   percentage, same for all model years?"
13            "Answer although the numbers of failure
14   presumption within an ECU security period differ the
15   whole model year, the number is about 26,000 on the whole
16   as a rate of a defect it is about eight percent."
17            Is that eight percent number accurate as far as
18   you know?
19       A.   As far as I know that seems about what my
20   understanding is.
21            MR. RAM:  Okay.  And then in answer three we've
22   got discussion of three different states of failure and
23   you are the one engineer in the room.  I'm going to also
24   ask you to look at Exhibit 11 which is a one-page
25   document entitled the influence on ATM failure of SL2 in